# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 24-961V**
UNPUBLISHED

| | |
|---|---|
| JANET ZIMET,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: September 8, 2026 |

*David John Carney, Green & Schafle LLC, Philadelphia, PA, for Petitioner.*

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC, for Respondent.*

**DECISION AWARDING DAMAGES**[1]

On June 24, 2024, Janet Zimet filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging a Table injury – Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of her receipt of an influenza ("flu") vaccine on October 12, 2022. Petition, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons set forth below, and after holding a brief hearing on damages in this matter, I find that Petitioner is entitled to compensation, and I award damages in the total amount of **$125,000.00, representing Petitioner's actual pain and suffering.**

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History

After the claim's initiation in June 2024, Respondent filed a Rule 4(c) Report conceding Petitioner's entitlement to compensation. ECF No. 19. Accordingly, on May 6, 2025, I issued a ruling on entitlement in Petitioner's favor. ECF No. 20. But the parties were unable to resolve damages on their own. ECF No. 23. I therefore ordered the filing of written briefs, and later scheduled this matter for an expedited hearing and ruling. ECF No. 24; ECF No. 29; Hearing Order (Non-PDF) filed August 5, 2026.

That hearing was held on August 21, 2026, and addressed an appropriate award of pain and suffering.[3] Petitioner requests that I award her $140,000.00 for past pain and suffering. ECF No. 25; ECF No. 27. Respondent proposes that I award no more than $100,000.00[4] for actual pain and suffering. ECF No. 26. After hearing argument, I made a damages determination. This Decision memorializes those findings.

## II. Legal Standard

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections I and II of *Pello v. Sec'y of Health & Hum. Servs.,* No. 24-1896V, 2026 WL 2211341, at *1-3 (Fed. Cl. Spec. Mstr. July 14, 2026).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[5]

---

[3] Matthew Bernstein appeared on behalf of Petitioner, and Benjamin Warder appeared on behalf of Respondent.

[4] Respondent in his brief recommended an award of "less than $100,000.00" (ECF No. 26), but at the hearing (and in response to my request for a specific award recommendation) Respondent recommended an award of $100,000.00. I strongly encourage Respondent to provide a specific number for pain and suffering when briefing damages in future matters.

[5] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed.

## III. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, sworn statements, filings, and all assertions made by the parties in written documents and at the expedited hearing held on August 21, 2026. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

More than seven years prior to the subject vaccination, Petitioner suffered bilateral shoulder pain. Her right shoulder problems were more significant than her left – ultimately resulting in right shoulder surgery. *See, e.g.*, Ex. 7 at 18, 25-26, 32. In regard to her left shoulder, Petitioner reported in 2015 that she had suffered pain "intermittently for years," and an MRI of the left shoulder demonstrated moderate degenerative arthritis as well as bursitis, and a partial thickness rotator cuff tear. Ex. 7 at 28. Petitioner was assessed with left shoulder bursitis with degenerative changes and received a steroid shot to treat her left shoulder. *Id.* at 29. Thereafter, there is no evidence that Petitioner suffered any further left shoulder pain or issues until her vaccination in 2022.[6]

Petitioner (then 68 years old) received the flu vaccine on October 12, 2022, at a pharmacy. Ex. 5 at 4, 6. Only 12 days post-vaccination, Petitioner messaged her primary care provider, stating that she "had a severe reaction. I experienced pain like I've never had before." Ex. 2 at 47. Petitioner further stated that she was out of state, but would be seen by her orthopedic provider if she was still in pain when she returned home in November. *Id.*

Subsequently on October 31, 2022, Petitioner was evaluated by orthopedist Roger Chams, MD, for a complaint of left shoulder pain. Ex. 3 at 31. Petitioner reported "getting a flu shot about 3.5 weeks ago and has been sore in the left shoulder since the flu vaccine. Complains of pain with certain positions and motions. Wakes her up at night." *Id.* at 32.

---

Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[6] Respondent asserts in his brief that Petitioner refused to provide an affidavit addressing the gap in her orthopedic record from December 2020 until October 31, 2022. ECF No. 26 at 2, FN 1. Notwithstanding this gap in Petitioner's orthopedic care, there is no evidence that Petitioner experienced any left shoulder issues or left shoulder treatment during this time period.

Petitioner received a steroid injection, was assessed with pain and bursitis of left shoulder, and referred to physical therapy. *Id.* at 34.

Ultimately, Petitioner persistently sought left shoulder treatment for eight months following her vaccination (undergoing nine physical therapy sessions,[7] two steroid injections[8] and an MRI[9]) before electing to have shoulder surgery on June 14, 2023.[10]

Petitioner subsequently engaged in treatment for her left shoulder for an additional nine months – including 40 post-operative PT sessions between June 28 and November 21, 2023. Ex. 9 at 19-21, 360. Petitioner last sought care for her left shoulder injury with her orthopedics office on March 13, 2024 – 17 months post-vaccination. Ex. 12 at 59. At that time, Petitioner was noted to be nine months post shoulder surgery, and engaging in a home exercise program. *Id.* She reported that she had "been progressing well" and that she had "been back to the activities that she enjoys to do with minimal pain." *Id.* She exhibited no range of motion deficits, and full strength (5/5) on both internal and external rotation, and 4+/5 strength on abduction – all of her strength scores were noted to be "not affected by pain." *Id*. at 60. She was advised to continue her home exercise program, return to "activities as tolerated," and follow-up as needed. *Id*. at 61. No further medical records pertaining to Petitioner's left shoulder injury have been filed.

In making my determination, I have also fully considered Petitioner's sworn statement dated June 19, 2024. Ex.10. Petitioner therein describes the pain, and the limitations she suffered caring for her grandchild, lifting materials at her part-time

---

[7] Petitioner engaged in nine physical therapy sessions between November 16, 2022 and January 31, 2023. Ex. 9 at 398, 471.

[8] Ex. 3 at 36; Ex. 7 at 274-75.

[9]Petitioner underwent a left shoulder MRI on February 2, 2023 with the following impressions:

> 1. Enlarging area of altered signal involving the distal 15 mm of the anterior half of the supraspinatus tendon consistent with a full-thickness rotator cuff tear intact.
> 2. Abnormal appearance of the labrum which can not be further characterized on today's study but is suspicious for a labral tear. Further evaluation of the labrum is suggested.
> 3. Postoperative changes of subacromial decompression
> 4. Stable moderate grade glenohumeral OA.

Ex. 7 at 281. On December 6, 2024, it was noted that the "radiologist amended [Petitioner's] MRI from 2/2023. The area they said was post operative (the AC joint) appears to show some arthritis." Ex. 12 at 32.

[10] On June 14, 2023, Petitioner underwent general anesthesia for the following surgical procedures: "left shoulder arthroscopy with debridement of labrum, subacromial decompression, Mumford procedure as well as rotator cuff repair." Ex. 6 at 6. Petitioner's pre and post operative diagnoses were: "Left shoulder impingement, acromioclavicular joint arthropathy, rotator cuff tear, and degenerative labral tear." *Id.*

seasonal workplace, pursuing her hobbies, sleeping, and generally engaging in the activities of daily living following her shoulder injury in 2022, and subsequent surgery. *Id*. Petitioner states in her declaration that she does not know if she will "ever feel 100% in my left shoulder or whether this deficiency is permanent." *Id*. at 11.

In sum, I find that Petitioner suffered a moderately severe shoulder injury for which she sought timely care and persistently engaged in a relatively significant amount of treatment, including: multiple steroid injections, fairly extensive physical therapy – 49 sessions, and a multi-part surgical proceeding. However, I find that Petitioner was *substantially*, although not completely recovered – I acknowledge Petitioner suffered some residual left shoulder pain – at her final orthopedic visit nine months after her surgery (and 17 months post-vaccination).

Petitioner argued in her briefs, and at the hearing in this case, that her claim "is comparable in both duration and severity" to the following SIRVA cases that reflect a pattern of awarding $125,000.00 in pain and suffering compensation where the "petitioner promptly reports post-vaccination shoulder pain, pursues an escalating course of treatment—including injections, imaging, surgical repair, and rehabilitative therapy—and experiences lasting limitations in range of motion, function, or pain:" *Stokes*, *Nute*, *McNabb*, *Brantley-Karasinski*, and *Drake*. ECF No. 25 at 23-39.[11]

However, Petitioner ultimately argues that her case was more severe than the aforementioned, while more in-line with the following two cases which "better define the upper range of compensation for surgical SIRVA cases with prolonged treatment courses and residual symptoms." ECF No. 25 at 42 (*citing Majerus* and *Peterson*).[12] In fact, Petitioner argues her injury and treatment course was more severe than the *Majerus* and *Peterson* cases (awarding $135,000.00 and $130,000.00 respectively for pain and suffering), and thus warrants an upward adjustment to an award of $140,000.00 for pain and suffering.

[11] The full citations for these cases all awarding $125,000.00 for actual pain and suffering in a SIRVA claim are as follows: *Stokes v. Sec'y of Health & Hum. Servs.*, No. 19-752V, 2021 WL 6550888 (Fed. Cl. Spec. Mstr. Dec. 17, 2021); *Nute v. Sec'y of Health & Hum. Servs.*, No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019); *McNabb v. Sec'y of Health & Hum. Servs.*, No. 19-1495V, 2022 WL 2398894 (Fed. Cl. Spec. Mstr. June 1, 2022); *Brantley-Karasinkski v. Sec'y of Health & Hum. Servs.*, No. 20-1058V, 2023 WL 7160919 (Fed. Cl. Spec. Mstr. Sept. 28, 2023; and *Drake v. Sec'y of Health & Hum. Servs.*, No. 18-1747V, 2020 WL 4674105 (Fed. Cl. Spec. Mstr. July 7, 2020).

[12] *Majerus v. Sec'y of Health & Hum. Servs.*, No. 20-1346V, 2023 WL 4573215 (Fed. Cl. Spec. Mstr. June 16, 2023) (awarding $135,000.00 in pain and suffering); and *Peterson v. Sec'y of Health & Hum. Servs.*, No. 20-1649V, 2023 WL 3591166 (Fed. Cl. Spec. Mstr. Apr. 20, 2023) (awarding $130,000.00 in pain and suffering).

I find the first series of cases offered by Petitioner (*Stokes*, *Nute*, *McNabb*, *Brantley-Karasinski*, and *Drake*) represent reasonably good comparables, despite some individual distinctions. However, *Majerus* and *Peterson* represent claims where the injury suffered was either more severe and/or of a longer duration than the injury suffered by Petitioner herein.[13]

In reaction, Respondent argues that the cases cited by Petitioner are distinguishable for various reasons, including that none "of these cases reflect [P]etitioner's course of care, or pre-existing chronic pathologies." ECF No. 26 at 9. To this end, Respondent points out in his brief that Petitioner's left shoulder MRI in 2023 "was similar to Petitioner's MRI from April of 2015—both showed moderate glenohumeral osteoarthritis and a possible labral tear—although the more recent MRI now showed progression from a partial to a full thickness rotator tuff tear." *Id* at 3 (citations omitted). Respondent further observes that Petitioner's June 2023 surgery confirmed her prior MRI diagnoses and further notes that her surgical findings also included "'severe AC joint arthropathy' indicative of a chronic condition." *Id*. (citing Ex. 6 at 7). Respondent argues previous decisions have "emphasized that pain and suffering attributable to a concomitant, but unrelated injury must be distinguished from the pain and suffering attributed to a SIRVA injury." *Id.* at 5 (citations omitted).

In sum, Respondent argues Petitioner should be awarded $100,000.00 in pain and suffering, pointing to a series of cases awarding between $95,000.00 and $110,000.00 which Respondent asserts represent awards in "cases involving surgery with moderate treatment." *Id.* at 5-7.[14] I agree with Respondent that *Yodowitz* is a reasonable

---

[13] Of note, in the *Majerus* case, the petitioner experienced gaps in her treatment as a result of her worker's compensation claim which I found "involuntarily and unnecessarily increased and prolonged [her] pain and suffering," additionally Ms. Majerus had to change jobs as a result of her injury. *Majerus,* 2023 WL 4573215. While the *Peterson* petitioner treated for his injury for more than three years and engaged in over 60 physical therapy sessions. *Peterson,* 2023 WL 3591166.

[14] Respondent cites the following specific cases: *Hunt v. Sec'y of Health & Hum. Servs*., No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022) (awarding $95,000.00 in pain and suffering); *Shields v. Sec'y of Health & Hum. Servs*., No. 20-1970V, 2024 WL 5261893 (Fed. Cl. Spec. Mstr. Nov. 26, 2024) (awarding $95,000.00 in pain and suffering); *Wall v. Sec'y of Health & Hum. Servs*., No. 20-1639V, 2025 WL 1983965 (Fed. Cl. Spec. Mstr. June 4, 2025) (awarding $95,000.00 in pain and suffering); *Shelton v. Sec'y of Health & Hum. Servs*., No. 19-0279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021) (awarding $97,500.00 in pain and suffering); *Langdon v. Sec'y of Health & Hum. Servs*., No. 20-1311V, 2023 WL 3411103 (Fed. Cl. Spec. Mstr. May 12, 2023) (awarding $99,000.00 in pain and suffering); *Felland v. Sec'y of Health & Hum. Servs.,* No. 20-406V, 2022 WL 10724100 (Fed. Cl. Spec. Mstr. Sept. 6, 2022) (awarding $100,000.00 in pain and suffering); *Crawford v. Sec'y of Health & Hum. Servs.,* No. 19-0544V, 2024 WL 1045147 (Fed. Cl. Spec. Mstr. February 5, 2024) (awarding $105,000.00 in pain and suffering); *Davidson v. Sec'y of Health & Hum. Servs.,* No. 20-1617V, 2024 WL 1152539 (Fed. Cl. Spec. Mstr. Feb. 8, 2024) (awarding $110,000.00 in pain and suffering); and *Yodowitz v. Sec'y of Health & Hum. Servs*., No. 21-0370V, 2024 WL 4284926 (Fed. Cl. Spec. Mstr. Aug. 23, 2024) (awarding $110,000.00 in pain and suffering $110,000.00).

comparable, but it represents the starting point for an appropriate award herein. ECF No. 27 at 22-23.[15] The *Yodowitz* petitioner had surgery relatively quickly (only two weeks post vaccination), and then treated for approximately six-months, before a six-month gap in treatment prior to engaging in a final round of physical therapy. *Yodowitz*, 2024 WL 4284926. In contrast Petitioner herein treated persistently for approximately seven and a-half months before engaging in surgery and then treated for an additional nine months post-surgery before being discharged from orthopedic care.

I find that the best comparable case is one offered by *neither* party – *Alvarez v. Sec'y of Health & Hum. Servs.,* No. 23-1024V, 2026 WL 1146940 (Fed. Cl. Spec. Mstr. Mar. 23, 2026) (awarding $125,000.00 in pain and suffering). In *Alvarez* (as here), Respondent "question[ed] the 'true impetus for Petitioner's surgery' based on the assessments of osteoarthritis ('a degenerative bone disease'), impingement syndrome, and rotator cuff tearing (which, Respondent argues, is 'not typically cause[d]' by a SIRVA)." *Id.* at *9 (internal citations omitted). I observed in that case, and the same is true in the instant case, that

> Respondent did not raise this argument against *entitlement* for the SIRVA claim (*e.g.,* under 42 C.F.R. § 100.3(c)(iv)). I find it more likely than not that Petitioner's SIRVA involved new pain and inflammation of preexisting pathology in the shoulder, resulting in her surgery within a reasonable timeframe post-vaccination. And it is not practicable under the facts of this case to separate out the "SIRVA" versus "non-SIRVA" aspects of a single surgery.

*Id.*[16] Thus, while I give *some* weight to Petitioner's pre-existing left shoulder pathology, the record establishes that Petitioner suffered no left shoulder issues for over seven years

---

[15] In his brief Respondent argues that the *Shields* case, awarding $95,000.00 in pain and suffering, represented the better comparable. ECF No. 24 at 7 (citing *Shields v. Sec'y of Health & Hum. Servs*., No. 20-1970V, 2024 WL 5261893 (Fed. Cl. Spec. Mstr. Nov. 26, 2024) (awarding $95,000.00 in pain and suffering)). However, at the Motion's Day hearing, Respondent's counsel (who was not the same counsel who drafted Respondent's brief) argued that *Yodowtiz* represents the best comparable although he maintained a lesser award was appropriate herein.

[16] I further observed in the *Alvarez* claim that

> [a] rotator cuff tear does not "per se preclude a finding that a Table SIRVA exists." *Lang v. Sec'y of Health & Hum. Servs*., No. 17-0995V, 2020 WL 7873272, at *13 (Fed. Cl. Spec. Mstr. Dec. 11, 2020) (noting an HHS-CDC joint study which found that rotator cuff tears were present in approximately 40% of a cohort of compensated SIRVA cases); *Grossmann v. Sec'y of Health & Hum. Servs*., No. 18-0013V, 2022 WL 779666, at *17 (Fed. Cl. Spec. Mstr. Feb. 15, 2022) (citing the Atanasoff article relied upon in creating the SIRVA QAI, for the proposition that "MRI findings... such as rotator cuff tears, may have been present prior to vaccination and became symptomatic as a result of vaccination-associated synovial

until her 2022 vaccination and resultant SIRVA injury (a Table injury which Respondent has conceded). Moreover, Petitioner's subsequent 17 months of treatment, including multiple cortisone injections, 49 physical therapy sessions, and complex surgery directly followed her vaccination and resulting SIRVA injury.

Petitioner's treatment course, overall injury severity and duration in the instant claim is comparable to that of the *Alvarez* petitioner, with some individual distinctions. While Ms. Zimet engaged in more physical therapy than Ms. Alvarez who engaged in only 11 physical therapy sessions, Ms. Alvarez sought out treatment more quickly than Petitioner herein, at only three days post-vaccination, and engaged in treatment for her shoulder injury for a longer overall duration of time– requiring a cortisone injection to her opposite shoulder due to overuse of the non-injured shoulder. Finally, I observe that both petitioners underwent relatively complex surgical procedures.

Accordingly, **$125,000.00 represents a fair and appropriate amount of compensation for Petitioner's past or actual pain and suffering.**

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $125,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[17]

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $125,000.00 to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

---

inflammation"); accord 42 C.F.R. § 100.3(c) (describing SIRVA as "an inflammatory reaction" within the musculoskeletal system of the shoulder).

*Alvarez*, 2026 WL 1146940, at *9, FN 14.

[17] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[18]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[18] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.